IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREEM HASSAN MILHOUSE,**[1] | : | |
| Petitioner | : | CIVIL NO. 1:16-CV-00618 |
| vs. | : | |
| **WARDEN DAVID EBBERT,** | : | (Judge Rambo) |
| Respondent | : | |

**MEMORANDUM**

**Background**

On April 14, 2016, Kareem Hassan Milhouse, a prisoner confined at the United States Penitentiary, Lewisburg, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) The petition reveals that Milhouse is serving sentences imposed on December 3, 2007, and February 15, 2008, by the United States District Court for the Eastern District of Pennsylvania.(Id.) Milhouse does not specify the offenses of which he was found guilty or the sentences he received. (Id.)

---

1. Petitioner is a frequent litigator in this court and other courts. At times his surname has been spelled as "Millhouse." However, in all of the cases his Federal Bureau of Prisons' number remained the same, i.e., 59904-066.

On April 18, 2016, an order was issued which directed Milhouse within 30 days to either pay the $5.00 filing fee or a motion to proceed in forma pauperis. (Doc. 3.) Thereafter, on April 28, 2016, Milhouse filed a motion for leave to proceed in forma pauperis. (Doc. 4.)

The petition will now be given preliminary consideration pursuant to Rule 4 of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, as made applicable to § 2241 cases by Rule 1 thereof.[2] For the reasons set forth below the petition will be dismissed.

**Discussion**

Milhouse's petition is scant in detail. (Doc. 1.) The court can discern, however, that he is challenging the outcome of a prison disciplinary proceeding where he was found guilty of prohibited act 104 (possession of a weapon) and 218 (destruction of

---

2. Rule 4 states in pertinent part that "[t]he clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition . . . ."

property) and received sanctions including the loss of 41 days of good conduct time. (Id.)  The decision of the Disciplinary Hearing Officer ("DHO") was dated August 25, 2015; on August 31. 2015, Milhouse filed an appeal to the Northeast Regional Office of the Federal Bureau of Prisons ("BOP"); the Regional Office affirmed the DHO's decision on October 2, 2015; and apparently Milhouse appealed the Regional Office's decision to the Central Office on October 2, 2015, but did not receive a response from the Central Office. (Id.)

The only claim raised in the present habeas petition is that there was insufficient evidence for the DHO to find Milhouse guilty of the prohibited acts charged. (Id. at 6.)

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir.2002).  It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v.

McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Milhouse's sanctions did include the loss of good conduct time, Milhouse has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418

U.S. at 563-67.  The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board."  Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992).  If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457. The Hill standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. See Thompson v. Owens, 899 F.2d 500, 501-502 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and entitled, Inmate Discipline and Special Housing Units.  These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994).  Pursuant to these regulations, staff

shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful.  28 C.F.R. § 541.5.  The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays.  Id.  If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine.  Id.  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. Id.

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner. Id. The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. Id. After the hearing the DHO will either (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. Id. If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2[3] of § 541.3. Id. Finally, the written report or decision of the DHO will contain the following:(1) whether the inmate was advised of his or her rights during the

---

3. Table 2 set forth sanctions for repeated prohibited acts within the same severity level. The government has not claimed that Bergin committed prior prohibited acts.

proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. Id.

　　　　Leaving aside for the moment the question of the sufficiency of the evidence, it is clear that Milhouse was afforded his procedural due process rights under Wolff and the BOP regulations.  With respect to the sufficiency of the evidence, Milhouse attached to the petition a copy of the DHO's decision and a copy of the Regional Office's affirmance of that decision to his petition.  Those document unequivocally establish that there was some evidence supporting the decision of the DHO.

　　　　This case involves the discovery of a knife inside a mattress found in the prison cell which Milhouse occupied. The mattress was damaged in order to deposit the knife inside the mattress. The DHO in his decision finding Milhouse guilty of the prohibited acts of possessing a weapon and destruction of property stated in pertinent part as follows:

The DHO finds that inmate Millhouse committed the prohibited acts of Possession of a Weapon and Destroying Government property Having a Value in Excess of $100, Codes 104 and 218. This finding is based on the eyewitness written account of the reporting officer which indicates on 08-04-2015 at approximately 7:35 a.m., the reporting officer was performing a random shakedown of D-Block cell 116, which houses inmates MILLHOUSE, Kareem #59904-066 and LEBRON, Elvin #64972-054. While performing the shakedown, the reporting officer found two torn mattress[es] and took them out of the cell to be X-rayed. The X-ray showed what appeared to be a homemade weapon concealed in one mattress. Upon further investigation, the reporting officer retrieved a 4 ½ inch plastic knife from inside the mattress.

This finding is further based upon the photographs of the homemade knife, 4.5" in length, fashioned from melted plastic and sharpened to a point at one end, discovered in cell D-116 by the reporting officer on 8-4-2015 and the photographs of the mattress with holes torn in them, discovered in cell D-116 by the reporting officer on 8-4-2015.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

The DHO has considered as evidence in this case the testimony of inmate Millhouse, as well as that of his cellmate at the time of the incident, inmate Lebron, #64972-054. The DHO gives lesser weight to this evidence than that to which the greater weight is given in this case, for the following reasons. First, Program Statement 5270.09, Inmate Discipline Program, states that inmates have a responsibility to keep their assigned areas free of contraband.  This includes the inmate's assigned living quarters, personal property, and person.  Inmates Millhouse and Lebron,

9

therefore, are responsible for any contraband discovered in their assigned living quarters. Inmates Milhouse and Lebron were assigned to the cell on 7-19-2015, 16 days prior to discovery of the homemade sharpened weapon (knife), concealed in a mattress in the cell. Each of the inmates, therefore, had ample opportunity to inspect the cell for contraband, to include each of the mattresses, and dispose of any contraband discovered in the cell which they were not willing to accept possession of. Both inmates Millhouse and Lebron denied possession of the sharpened weapon in this case. Consequently, the DHO must find that each inmate committed the prohibited act of possession of a weapon in this case.

The DHO has further considered as evidence in this case the testimony of inmate Millhouse, in which he alleges that the mattress in question was issued to him in that condition by staff. The DHO considers this evidence to be less credible than that to which greater weight is given in this case, for the following reasons. First, institution procedure requires that inmates be issued unaltered clothing and bedding by staff. Further, inmate Millhouse is not disputing that his assigned mattress did, in fact, have holes torn in it. . . . Finally, Millhouse was not able to provide the names of any staff members who could verify they were aware the mattress in question was issued to Millhouse in the condition depicted in the photograph, attached to the incident report as evidence in this case. Millhouse testified that he thought Officer Nayda stated he was able to verify the mattress was issued to him in that condition, however, Officer Nayda stated he was was not able to do so. Therefore, the DHO does not find Millhouse's claim that the items were issued to him in that condition to be credible. Finally, both of the mattresses in cell D-116 were found to be altered and/or

> damaged when the cell was searched. Again, both
> inmates Millhouse and Lebron denied tearing,
> damaging, or altering either of the mattresses
> in the cell.  Consequently, the DHO must find
> that each inmate committed the prohibited act
> of Destruction of Government Property in this
> case.
>
> The greater weight of the evidence in this case,
> therefore, supports the finding inmate Millhouse
> committed the prohibited acts of Possession of
> a Weapon and Destroying Government Property
> Having a Value in Excess of $100.00, Codes 104
> and 218.

(Doc. 1, at 11-12.)  Milhouse appears to argue in his petition that the mattress in which the knife was found was issued to another inmate by the name of "Evans" because the mattress had that name written on it with a black marker and that the mattress was found on the top bunk of his cell. (Id. at 7.) These contentions are irrelevant, however, because there is some evidence that the mattresses were provided to both inmates in an undamaged condition.  The established policy was to provide inmates with undamaged items and there is no evidence other than Milhouse's testimony which the DHO did not find credible that the policy was not strictly

11

followed.  Furthermore, the Regional Counsel's Office in affirming the decision of the DHO noted that

> [i]n general, a person has constructive possession of an item if he knowingly has ownership, dominion, or control over the item itself or over the premises in which the item is located.  The weapon was found in your cell, an area over which you have dominion and control.
>
> The record reveals your requested witness could not verify your claim the mattress was issued to you in a damaged condition.
>
> The record in this case reflects substantial compliance with Program Statement 5270.09, Inmate Discipline.  The decision of the DHO was based on the greater weight of the evidence, and the sanctions imposed were consistent with the severity level of the prohibited acts.

(Id. at 16.)

Millhouse petition and attachments thereto reveal that evidence was submitted at the disciplinary hearing (including the fact that both mattresses were damaged when the cell was inspected, the practice is to issue undamaged mattresses to inmates upon entering new cells, and Milhouse and his cellmate had only occupied the cell for 16 days prior to the discovery of the

12

knife) from which the DHO to conclude that the greater weight of the evidence supported a finding that Millhouse had constructive possession of the knife and was responsible for damaging his mattress.  The DHO gave an explanation for the sanctions, including his judgment as to what was needed to deter Milhouse from engaging in similar behavior in the future. Furthermore, the sanctions imposed by the DHO were authorized by BOP regulations.  Milhouse was accorded all of his due process rights under Wolff and BOP regulations, and there was some evidence supporting the decision of the DHO. Consequently, Millhouse petition for writ of habeas corpus will be dismissed.

      Finally, because Milhouse is not detained because of process issued by a state court and the petition is not brought pursuant to 28 U.S.C. § 2255, no

13

action by this court with respect to a certificate of appealability is necessary.

      An appropriate order will be entered.


                        s/Sylvia H. Rambo
                        SYLVIA H. RAMBO
                        United States District Judge

Dated: August 8, 2016